UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JUAN D. THOMAS, JR., | 4:25-CV-04153-CCT |
| Plaintiff, | |
| vs. | |
| ZACHARY RUNGE, Correctional Officer at South Dakota State Penitentiary, in his individual capacity; ISSAC BOYER, Correctional Officer at South Dakota State Penitentiary, in his individual capacity; KAILEY BRUNZ, Correctional officer at South Dakota State Penitentiary, in her individual capacity; DR. AARON HAYNES, Medical Director at South Dakota State Penitentiary, in his individual and official capacities; DESIRAE KUMMER, Medical Charge Nurse at South Dakota State Penitentiary, in her individual capacity; STEPHANIE RAMSDELL, Housing Sergeant at South Dakota State Penitentiary, in her individual capacity; MICHAEL BIGGINS, Senior Correctional Officer at South Dakota State Penitentiary, in his individual capacity; JOSEPH ROEMMICH, Warden at the South Dakota State Penitentiary, in his individual and official capacities; KELLIE WASKO, Secretary of Corrections at South Dakota Department of Corrections, in her individual and official capacities; and RENE STOLSMARK, Director at Pheasantland Industries, in her individual and official capacities, | **ORDER DISMISSING PLAINTIFF'S CLAIMS IN PART AND DIRECTING SERVICE IN PART PURSUANT TO § 1915A** |
| Defendants. | |

Plaintiff, Juan D. Thomas, Jr., filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 while he was incarcerated at the South Dakota State Penitentiary.[1] Dockets 1, 8, 11. This Court granted Thomas leave to proceed in forma pauperis and ordered him to pay an initial partial filing fee, which Thomas timely paid. Docket 5.

## I.    1915A Screening

### A.    Factual Background Alleged by Thomas

After he filed his original complaint, Docket 1, Thomas moved to amend his original complaint and filed a proposed amended complaint. Dockets 7, 8. "A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it[.]" Fed. R. Civ. P. 15(a)(1)(A). Thomas filed his amended complaint before his complaint was screened or served and could amend his complaint as a matter of course. Therefore, his motion for leave to amend his original complaint, Docket 7, is granted. Because an amended pleading "supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified[,]" this Court screens Thomas's amended complaint, Docket 8. 6 *Wright & Miller's Federal Practice & Procedure* § 1476 (3d ed. 2025).

Before this Court screened Thomas's amended complaint, Docket 8, Thomas moved for leave to file a second amended complaint and attached a

---

[1] Thomas has since been transferred to Mike Durfee State Prison. *See* Docket 15; *see also Adult Corrs. Offender Locator*, South Dakota Dep't of Corrs., https://docadultlookup.sd.gov/adult/lookup/details/?id=je9FE9dSaJo= (last visited May 20 2026).

proposed second amended complaint. Dockets 10, 11. Thomas seeks to file a second amended complaint in order to correct certain information, to change the dollar amount of damages sought, and to add a fifth cause of action. Docket 10 at 1. Thomas's proposed fifth cause of action is a First Amendment retaliation claim, stemming out of an event occurring in February of 2026. Docket 11 at 14.

Thomas filed his original complaint on August 13, 2025. *See* Docket 1. Because his proposed second amended complaint details events occurring after the date of his original complaint, his motion to file a second amended complaint is properly construed as a motion to file a supplemental complaint. *See Mgmt. Registry, Inc. v. A.W. Co., Inc.*, No. 17-CV-5009, 2024 WL 1956176, at *2 (D. Minn. Mar. 20, 2024) ("Unlike an amended pleading, which adds matters overlooked or unknown to a party when filing, '[a] supplemental pleading [ ] is designed to cover matters subsequently occurring but pertaining to the original cause.'" (quoting *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977)).

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Thomas complied with this Court's local rules when filing his supplemental complaint, and his amended complaint has not yet been served on defendants. Thus, Thomas's motion to supplement his complaint, Docket

3

10, is granted, and this Court will consider the facts and updated amount of damages included in Thomas's supplement when screening his complaint. *See* 6A *Wright & Miller's Federal Practice & Procedure* § 1506 (3d ed. 2026) ("A supplemental pleading may . . . set forth new facts in order to update the earlier pleading, or change the amount or nature of the relief requested in the original pleading.").

This Court will also consider the new claim Thomas asserts in his supplemental complaint because it relates to the claim Thomas brings against Stolsmark in his amended complaint. *See* Docket 8 at 12–13; Docket 11 at 14. One the "basic policies" of the federal rules "is that a party should be given every opportunity to join in one lawsuit all grievances against another party regardless of when they arose." 6A *Wright & Miller's Federal Practice & Procedure* § 1506 (3d ed. 2026). "Thus, in several cases courts have ruled that a supplemental pleading may include a new 'cause of action' when it would be convenient to litigate all the claims between the parties in the same action." *Id.*

Thomas's amended complaint arises out of events occurring at the South Dakota State Penitentiary, and he brings five total claims against various South Dakota Department of Corrections personnel.[2] Dockets 8, 11.

---

[2] Thomas provides that Rene Stolsmark is the Director of Pheasantland Industries. Docket 8 at 4. Pheasantland Industries is a "correctional industries program operated by the South Dakota Department of Corrections[]" that "provide[s] meaningful work and training to the workers to support successful reintegration into society by developing transferable job skills." *Pheasantland Industries FAQs*, South Dakota Dep't of Corrs., https://www.doc.sd.gov/pheasantland-industries/pheasantland-industries-faqs (last visited May 15, 2026); *see also* Docket 8 at 12.

4

     **1.**     **Count I – Eighth Amendment Deliberate Indifference (Diabetes)**

While Thomas was working in the Pheasantland Industries building on May 27, 2025, he was detained by Correctional Officer Runge for "investigative purposes" and taken to a holding cell in the "west hall" at 3:11 p.m. Docket 8 at 6. Around 4:30 p.m., while Thomas was still in the holding cell, he informed Correctional Officer Issac Boyer that he "needed something to eat because [he is] a diabetic who suffers from hypoglycemia if [he goes] too long without eating." *Id.* Thomas informed Boyer that the last time he had eaten was at 10:00 a.m. *Id.* Thomas alleges that he "began to physically shake and knew that this was the onset of a hypoglycemic episode. [He] again informed Officer Boyer and asked him to bring [Thomas] a meal tray. Officer Boyer did nothing and said he would 'work on it.'" *Id.*

After Thomas's interaction with Boyer, Correctional Officer Kailey Brunz walked past Thomas's holding cell and "made a point to stop and ask [him] if [he] was okay because [he] was visibly shaking and in obvious distress." *Id.* at 7. Thomas explained the situation to Brunz and asked that she bring him a meal tray because he was experiencing a hypoglycemic episode. *Id.* Brunz told Thomas that "she would have to check with Officer Boyer and left." *Id.* Thomas claims that Brunz "did nothing and failed to obtain [him] a meal tray nor did she attempt to summon medical personnel in order to have [him] evaluated, despite [his] obvious discomfort and distress and telling her of [his] medical condition." *Id.*

Thomas alleges that he remained in the holding cell without food or medical care, and at 6:14 p.m., became nauseated and began to vomit before he ultimately lost consciousness. *Id.* According to Thomas, "[i]t was only after [he] passed out and lay motionless on the holding cell floor that Defendant(s), presumably Officer(s) Boyer and Brunz, summoned medical staff who subsequently responded. Medical Personnel determined that [he] was in fact suffering a hypoglycemic episode[,]" and Thomas was given glucose tablets "in order to get [his] blood sugar to an acceptable level." *Id.* After medical personnel had responded, Boyer gave Thomas two sack lunches. *Id.*

Thomas brings Eighth Amendment deliberate indifference to serious needs and conditions of confinement claims against Runge, Boyer, and Brunz. *Id.* at 6. Runge, Boyer, and Brunz are all sued in their individual capacities. *Id.* at 2.

### 2. Count II – Eighth Amendment Deliberate Indifference (Spinal Stenosis)

In Count II of his amended complaint, Thomas brings Eighth Amendment deliberate indifference to serious medical needs claims against Ramsdell, Kummer, and Haynes for their "refusal . . . to treat [his] spinal stenosis[.]" *Id.* at 8.

Thomas states that he suffers from "spinal stenosis, herniated L3 through L5 discs[,] and deterioration of the lower spine and back[,]" issues that limit his daily movement and activities and cause "near constant back and nerve pain[.]" *Id.* According to Thomas, treatment for this condition "includes

orthotic arch supports because those work to alleviate the lower back pain and pressure that [he] experience[s] on a daily basis." *Id.*

Thomas states that he requested orthotics from Charge Nurse Kummer, who passed on this request to Dr. Haynes. *Id.* Dr. Haynes denied the request on January 1, 2025. *Id.* Thomas then filed an informal resolution with Stephanie Ramsdell as the first step in the grievance process, informing her of his condition and requesting orthotics. *Id.* "In her response, Sgt. Ramsdell stated that she reached out to Nurse Kummer who informed her that she would again request that [Thomas] be provided with orthotics." *Id.* Thomas then provided Kummer with medical records[3] from various medical providers that described Thomas's diagnoses. *Id.* at 9. After Thomas's request was denied by Dr. Haynes a second time, he attempted to file another informal resolution. *Id.* But Thomas contends that he "was prevented from doing so and informed that [he] could not file another grievance regarding orthotics because [he] had previously filed one on the 'same issue.'" *Id.*

Thomas alleges that "[b]y refusing to provide [him] with orthotic arch supports, Nurse Kummer, Dr. Haynes, and Sgt. Ramsdell are refusing to treat [his] spine and back ailments while also causing [him] to needlessly suffer and endure daily pain and discomfort." *Id.* Kummer and Ramsdell are both sued in their individual capacities only, *id.* at 3, and Haynes is sued in both his individual and official capacities, *id.* at 2.

---

[3] These medical records were from before Thomas was admitted to prison. *Id.* at 9.

### 3.    Count III – First and Fourteenth Amendment

In Count III of his amended complaint, Thomas alleges that Biggins, Wasko, and Roemmich violated his First and Fourteenth Amendment rights. *Id.* at 10–11.

On July 8, 2025, Thomas was summoned to the mailroom window because he had received legal correspondence from his attorney, Nicole Griese, who is representing Thomas in a pending state habeas action.[4] *Id.* at 10. "Despite the privileged nature of the correspondence from Ms. Griese and the envelope being clearly indicative of such, Senior Correctional Officer Michael Biggins opened and copied the legal mail. Instead of being given the original legal documents mailed by Ms. Griese, [Thomas] was instead provided with a copy." *Id.* Thomas claims he was told that his legal mail was opened and copied pursuant to a policy change at the South Dakota State Penitentiary, DOC Policy #500-06, which went into effect on July 1, 2025. *Id.*

Thomas asserts that the document he received from Griese "required an original signature on the original document[,]" and that because Biggins "opened and copied the envelope and its contents, shredding the original thereafter, [Thomas] was unable to sign and return the original document to Ms. Griese." *Id.* at 11. Thomas contends that Biggins "did this under the policy and direction of Secretary Wasko and Warden Roemmich." *Id.* Thomas alleges that "[t]his revised policy and procedure regarding legal correspondence is

---

[4] Thomas provides that his habeas action, No. 41CIV21-268, is pending in Lincoln County, South Dakota. *Id.* at 10.

violative of [his] First Amendment rights as well as [his] Fourteenth Amendment right to due process as it is interfering with [his] still pending state habeas case." *Id.*

Thomas sues Biggins in his individual capacity only and sues Wasko[5] and Roemmich in both their individual and official capacities. *Id.* at 3, 4.

### 4.    Count IV – Fourteenth Amendment Equal Protection

Thomas brings a Fourteenth Amendment equal protection claim against Rene Stolsmark, whom he sues in both her individual and official capacities. *Id.* at 4, 12.

Thomas states that he is "a black man and for that reason [is] a 'protected class' in regards to the equal protection clause of the Fourteenth Amendment." *Id.* at 12. Thomas was employed by Pheasantland Industries, which is a "state owned and operated prison industries business[,]" as the manager of the braille shop. *Id.* Thomas states that on May 27, 2025,[6] he "was found to be in possession of an unauthorized flash drive and was eventually given an institutional write up for violating prison rule L26." *Id.* According to Thomas, a prisoner violates Rule L26 for "having in [their] possession . . . any article not issued to [them.]" *Id.* Thomas states that he admitted to violating

---

[5] Kellie Wasko is no longer the Secretary of Corrections. In accordance with Federal Rule of Civil Procedure 25(d), Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Wasko on the official capacity claims.

[6] In his complaint, Thomas lists this date as "May 27, 2027[.]" Docket 8 at 12. But the Court understands this date to be a typographical error, and that Thomas is instead referring to May 27, 2025, because the rest of the facts Thomas alleges in this section occurred in 2025. *See id.* at 12–13.

this rule, and received a sanction of "time served for the 4 days already spent in the [Segregated Housing Unit]." *Id.* "After waiting and expecting to return to work, [Thomas] discovered that [he] was summarily fired by Pheasantland Industries Director Rene Stolsmark. The pretense for [his] termination was supposedly the L26 write up." *Id.* Because he has been discharged and is not allowed to return to Pheasantland Industries, Thomas alleges that he has been deprived of income and the opportunity to earn Earned Discharge Credits for time off his sentence. *Id.*

Thomas alleges that a white employee at the Pheasantland Braille Shop, Gage Binger, "stole hardware out of a work computer in order to fashion a tattoo gun[,]" and was also written up for a violation of Rule L26. *Id.* at 13. But Binger "did not loose [sic] his job and was instead suspended from working for a matter of days." *Id.* Two other white Braille Shop employees, William Kuper and Jarren Manning, were involved in a physical altercation on September 1, 2025, and were both placed in the Segregated Housing Unit as a disciplinary measure. *Id.* "Despite the violent nature of the attack," Stolsmark allowed both Kuper and Manning to return to work on September 2, 2025, "without consequences for their actions." *Id.*

Thomas claims that he is being "singled out and treated disparately by Director Stolsmark because of [his] race and being African American." *Id.* Thomas contends that "[w]hite inmate employees are allowed to keep their jobs with relatively no consequences for conduct that is equal to or more severe than [his] own." *Id.* Thomas cites to *Planned Parenthood of Minnesota v. Noem,*

10

584 F. Supp. 3d 759 (D.S.D. 2022) and states that he is "being treated disparately because of [his] race[]" and in violation of the Fourteenth Amendment's equal protection clause. *Id.*

### 5.    Count V – First Amendment Retaliation

In his supplemental complaint, Thomas alleges a First Amendment retaliation claim against Stolsmark. Docket 11 at 14. Thomas states that he "was hired as an inmate employee of the Pheasantland Industries (PI) DOT Sign Shop and was supposed to start work on 02/04/26." *Id.* The South Dakota State Penitentiary job committee, Pheasantland Industries Manager Justin Winters, and the sign shop foreman, Kendrick Winters,[7] approved Thomas being hired. *Id.* On the day that Thomas expected to start work, he was informed that his job offer had been rescinded by Stolsmark and that the "reason behind the recession was that Ms[.] Stolsmark learned that [Thomas] had filed this suit and named her as a defendant." *Id.* According to Thomas, "Stolsmark stated something to the effect that 'if [Thomas] wants to sue [her], he can wait to get a job.'" *Id.*

Thomas alleges that he has been retaliated against in violation of the First Amendment. *Id.* Thomas contends that this retaliation and having his job rescinded "not only deprives [him] of financial income, but the opportunity to earn EDC's and time off [his] sentence." *Id.*

---

[7] Neither Justin Winters nor Kendrick Winters are named as defendants in Thomas's original, amended, or supplemental complaint. *See* Dockets 1, 8, 11.

### 6.      Request for Relief

As relief, Thomas requests that the Court "[a]ssess $250,000.00 damages jointly & severally against Defendants in their individual capacities covering all 5 counts." Docket 11 at 15. Additionally, Thomas requests unspecified injunctive relief against Dr. Haynes in his official capacity for Count II, against Wasko and Roemmich in their official capacities for Count III, and unspecified injunctive and declaratory relief against Stolsmark in her official capacity regarding Counts IV and V. *Id.* Thomas also requests any additional relief that is equitable and just. *Id.*

### B.      Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart,* 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly,* 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota,* 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Thomas's claims under 28 U.S.C. § 1915A.

## C.    Legal Analysis

### 1.    Official Capacity Claims for Injunctive and Declaratory Relief

Thomas requests injunctive and declaratory relief from Stolsmark in her official capacity in relation to his employment at Pheasantland Industries. *See* Docket 8 at 14; Docket 11 at 14, 15. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and amenable to suit. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989).

13

The United States Court of Appeals for the Eighth Circuit has held, however, that an "inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions[.]" *Gladson v. Iowa Dep't of Corrs.*, 551 F.3d 825, 835 (8th Cir. 2009) (citing *Pratt v. Corrs. Corp. of Am.*, 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); *see also Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 960 (8th Cir. 2018) (noting that "[i]t makes no difference that it is theoretically possible that the plaintiff could return to the original facility and once again face the same conditions[]" when holding that "an action seeking an injunction to alter prison conditions becomes moot once the plaintiff transfers to another facility.").

While Thomas was incarcerated at the South Dakota State Penitentiary at the time he filed this complaint and moved for leave to proceed in forma pauperis, *see* Docket 1 at 1; Docket 2 at 1, he has been since been transferred to Mike Durfee State Prison. *See* Docket 15. Pheasantland Industries is located at the South Dakota State Penitentiary.[8] Therefore, Thomas's claims related to his employment at Pheasantland Industries are now moot due to his transfer to Mike Durfee State Prison. Similarly, Thomas's claims against Roemmich, the warden at the South Dakota State Penitentiary, are moot. *See Randolph v.*

---

[8] The address for Pheasantland Industries is 1600 North Drive PO Box 5911, which is the address for the South Dakota State Penitentiary. *See Welcome to Pheasantland Industries*, South Dakota Dep't of Corrs., https://www.doc.sd.gov/pheasantland-industries (last visited May 21, 2026); *see also South Dakota State Penitentiary*, South Dakota Dep't of Corrs., https://www.doc.sd.gov/adult-corrections/facilities/south-dakota-state-penitentiary (last visited May 21, 2026).

14

*Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) (explaining that a claim for injunctive relief against a warden is moot when the plaintiff is transferred to another prison (citing *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)). Therefore, Thomas's claims for injunctive and declaratory relief against Stolsmark and Roemmich in their official capacities are dismissed without prejudice as moot under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Thomas also requests injunctive relief from Haynes and Lamb[9] in their official capacities. *See* Docket 8 at 14; Docket 11 at 15. But Haynes, as the Medical Director for the South Dakota Department of Corrections, and Lamb, as the Secretary of Corrections, have authority over both the South Dakota State Penitentiary and Mike Durfee State Prison, as both facilities are operated by the South Dakota Department of Corrections. In *Randolph v. Rodgers*, the Eighth Circuit held that claims seeking injunctive relief could proceed against the director of the Minnesota Department of Corrections (MDOC) because she "has authority over the entire MDOC and an injunction against her would have effect no matter where in the MDOC system [plaintiff] is incarcerated." 253 F.3d at 346. Therefore, Thomas's claims for injunctive relief from Haynes and Lamb are not moot.

---

[9] As stated earlier, Lamb, the current Secretary of Corrections, is substituted for Wasko for claims against her in her official capacity pursuant to Federal Rule of Civil Procedure 25(d). *See supra*, at 9 n.5.

### 2.   Individual Capacity Claims for Monetary Damages and Official Capacity Claims for Injunctive Relief Against Haynes and Lamb

Thomas sues each defendant in their individual capacity for monetary damages. Docket 8 at 2–4, 14; Docket 11 at 15. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). As the United States Court of Appeals for the Eighth Circuit has explained,

> [E]ach Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation modified). In other words, Thomas's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

As for Thomas's official capacity claims for injunctive relief against Haynes and Lamb, a plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." *Warfield v. Hettich*, 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Because Thomas sues the medical director of the

16

South Dakota Department of Corrections and the Secretary of Corrections, he has sufficiently alleged at this stage of the proceedings that these defendants have some connection with the alleged unconstitutional conduct for which he seeks injunctive relief.

### a.   Count I – Eighth Amendment Deliberate Indifference (Diabetes)

Thomas brings an Eighth Amendment deliberate indifference claim[10] against Runge, Boyer, and Brunz, stating that their "inactions . . . caused [him] to suffer a hypoglycemic episode." Docket 8 at 6. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

---

[10] Thomas also references "conditions of confinement[.]" Docket 8 at 1. Because the alleged constitutional violation arises out of Thomas's underlying medical need, Thomas's claim is more accurately characterized as an Eighth Amendment deliberate indifference to serious medical needs claim, and this Court will analyze it as such.

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025) (quoting *Cheeks v. Belmar*, 80 F.4th 872, 876 (8th Cir. 2023)). Here, Thomas alleges that he informed Boyer and Brunz that he needed to eat something to prevent having a hypoglycemic episode and that both Boyer and Brunz observed Thomas shaking and in a state of "obvious distress." Docket 8 at 6–7. At this time, Thomas has alleged a plausible deliberate indifference claim, and his Eighth Amendment deliberate indifference claims against Boyer and Brunz in their individual capacities for monetary damages survive § 1915A screening.

Thomas's deliberate indifference claim against Runge, however, fails. Thomas provides only that Runge transferred Thomas from the Pheasantland Industries building to a holding cell. *Id.* at 6. Thomas does not provide any facts that he informed Runge of his diabetes or the risk of a hypoglycemic episode, or that Thomas was exhibiting any signs of a hypoglycemic episode at the time Runge transferred Thomas. *See id.* Because Thomas fails to show that

18

Runge actually knew of but deliberately disregarded Thomas's needs, Thomas's Eighth Amendment claim against Runge in his individual capacity is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b.   Count II – Eighth Amendment Deliberate Indifference (Spinal Stenosis)

In Count II of his complaint, Thomas brings Eighth Amendment deliberate indifference to serious medical needs claims against Ramsdell, Kummer, and Haynes for their "refusal . . . to treat [his] spinal stenosis[.]" Docket 8 at 8. As discussed above, the deliberate indifference standard includes both an objective and subjective component. *Dulany*, 132 F.3d at 1239 (citation omitted). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citation omitted). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Dantzler*, 133 F.4th at 843 (citation omitted).

Here, Thomas alleges that he was diagnosed with spinal stenosis, and that as a result of this condition, his daily movement and activities are limited and he is in "near constant" pain. Docket 8 at 8, 9. Thomas also alleges that "[t]he treatment for [this] condition includes orthotic arch supports because those work to alleviate the lower back pain and pressure that [Thomas] experience[s] on a daily basis." *Id.* Therefore, this Court assumes for purposes

19

of screening that Thomas has sufficiently pled the existence of a serious medical need.

As for the second prong, "the official must know of and disregard the inmate's serious medical need." *Dantzler*, 133 F.4th at 846. Here, Thomas alleges that he informed Charge Nurse Kummer of his pain and that he needed orthotics, and that she in turn informed Dr. Haynes. Docket 8 at 8. Thomas also alleges that he informed Sergeant Ramsdell of his condition and requested orthotics. *Id.* Although Thomas informed these defendants of his need for orthotics, and ultimately provided Nurse Kummer with medical records detailing his diagnosis, his requests for orthotics were denied. *Id.* at 8–9. Therefore, Thomas has established a plausible deliberate indifference claim. His Eighth Amendment deliberate indifference claim regarding his spinal stenosis against Kummer, Haynes, and Ramsdell in their individual capacities for monetary damages, as well as against Haynes in his official capacity for injunctive relief,[11] survives § 1915A screening.

### c.    Count III – First and Fourteenth Amendment

In Count III of his complaint, Thomas alleges that Biggins, Wasko, and Roemmich violated his First and Fourteenth Amendment rights based on the implementation of a mail policy where mail, including legal mail, is opened and copied, and the copies are provided to the inmate after the original has been shredded. *Id.* at 10–11.

---

[11] Thomas does not explicitly state what injunctive relief he is seeking. *See id.* at 8–9, 14. Liberally construing his complaint, however, this Court understands Thomas to be requesting orthotics. *See id.* at 8–9.

### i.      Right to Send and Receive Mail

Liberally construing his complaint, Thomas is alleging a First Amendment right to send and receive mail claim. Inmates retain the First Amendment "right to send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (citations omitted). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1997).

"While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). In *Turner*, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if [they are] reasonably related to legitimate penological interests." 482 U.S. at 89. The Eighth Circuit has applied *Turner*'s four-factor test to prison regulations regarding mail:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

21

*Thongvanh*, 17 F.3d at 259. This standard applies to both incoming and outgoing mail. *Id.*

This Court must give "considerable deference to the determinations of prison administrators who, in the interests of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted). Deference is accorded to prison administrators because the realities of running a penal institution are complex, and courts are ill-equipped to deal with problems of prison administration. *Jones*, 433 U.S. at 136. As the Supreme Court observed in *Turner*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are the province of the legislature and executive branches of government." 482 U.S. at 84–85.

Here, the basis of the constitutional violation Thomas alleges is not that he is not receiving his mail, but that he receives photocopies of his mail, including "privileged" mail from his attorney. Docket 8 at 10. Because defendants have not yet had an opportunity to identify a legitimate penological interest behind the prison correspondence policy, this Court cannot say that Thomas's claims are wholly without merit. But Thomas must still allege that each individual defendant participated in the unconstitutional conduct. *See Parrish*, 594 F.3d at 1001.

Thomas states that Biggins was directly involved in opening and copying his legal mail, and therefore Thomas's First Amendment right to send and

22

receive mail claim against Biggins in his individual capacity for monetary damages survives § 1915A screening. While Wasko and Roemmich were not personally involved with impeding Thomas's right to send and receive mail, Thomas alleges that Wasko and Roemmich approved and implemented the legal correspondence policy at issue. Docket 8 at 10; *see also Arnett v. Norris*, 160 F.4th 921, 929–30 (8th Cir. 2025) ("Even if the supervisors are not involved in the day-to-day operations that led to the incident at issue, personal involvement may be found if the supervisors were involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." (citation modified)). Therefore, Thomas's First Amendment right to send and receive mail claim against Roemmich and Wasko in their individual capacities for monetary damages, and against Lamb in his official capacity for injunctive relief,[12] also survives § 1915A screening.

### ii.       Access to the Courts

Thomas brings claims against Biggins, Wasko, and Roemmich for violations of his First and Fourteenth Amendment rights to access the courts. Docket 8 at 10, 14. Although "the basis of the constitutional right of access to the courts" is "unsettled[,]" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), "[t]he Constitution guarantees prisoners a right to access the courts[,]" *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he fundamental constitutional

---

[12] Thomas does not specify what injunctive relief he is seeking. *See* Docket 8 at 10–11, 14. Liberally construing his complaint, Thomas is requesting that this Court enjoin defendants from enforcing the mail policy Thomas objects to. *See id.*; *see also* Docket 12.

right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury because of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). To satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Lewis*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Lewis*, 518 U.S. at 356); *see also Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (holding that the right to access to the courts applies in habeas and civil rights contexts).

Here, Thomas alleges that he was "supposed to sign and return the original document" sent to him by his attorney, but he that he was prevented from doing so because the original document was copied and subsequently shredded. Docket 8 at 10–11. Thomas alleges that this mail concerned his state habeas corpus action pending in Lincoln County, South Dakota, and that the document sent by his attorney "required an original signature on the original document." *Id.* Thomas also states that the "policy and procedure regarding legal correspondence . . . is interfering with [his] still pending state habeas

24

case." *Id.* at 11. At this stage of the proceedings, this Court finds that Thomas has pled a plausible First Amendment access to the courts claim. Thomas's First Amendment access to the courts claim against Biggins, Wasko, and Roemmich in their individual capacities for monetary damages, and against Lamb in his official capacity for injunctive relief,[13] survives § 1915A screening.

### d.     Count IV – Fourteenth Amendment Equal Protection

Thomas alleges a Fourteenth Amendment equal protection claim against Stolsmark because white inmate employees have been allowed to keep their jobs at Pheasantland Industries while he has been "singled out and treated separately by Director Stolsmark because of [his] race and being African American." Docket 8 at 12–13.

"The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990)). To establish "an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815–16 (8th Cir. 2008) (quoting *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir.

---

[13] Here as well, Thomas fails to specify what injunctive relief he is seeking. Docket 8 at 10–11, 14. But as discussed above, this Court liberally construes Thomas's complaint to be requesting that this Court enjoin defendants from enforcing the mail policy he objects to. *See supra*, at 23 n.12.

2006)). "Suspect classifications include those such as race, alienage, gender, or national origin." *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

Here, Thomas alleges that he has been treated differently on account of his race. Docket 8 at 12–13. Thomas also alleges that similarly-situated white inmates, inmates who have committed rule violations, have not been terminated from their jobs, as Thomas was. *Id.* At this point, the Court is unable to determine that Thomas's Fourteenth Amendment equal protection claim is wholly without merit. Thomas's Fourteenth Amendment claim against Stolsmark in her individual capacity for monetary damages survives § 1915A screening.

### e.    Count V – First Amendment Retaliation

In his supplemental complaint, Thomas alleges a fifth claim for First Amendment retaliation against Stolsmark. Docket 11 at 14, 15. To state a First Amendment retaliation claim, Thomas must first show that he engaged in a protected First Amendment activity. *Aldridge v. City of St. Louis*, 75 F.4th 895, 898 (8th Cir. 2023) (citing *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023)). Thomas must then point to "an adverse action that would chill a person of ordinary firmness from continuing in the protected activity." *Id.* at 899 (citation modified). Lastly, Thomas must show that the adverse action was "a 'but-for cause' of the injury [suffered.]" *Beard v. Falkenrath*, 97 F.4th 1109, 1119 (8th Cir. 2024) (alteration in original) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). "It is not enough to show that an official acted with a

26

retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves*, 587 U.S. at 398 (emphasis in original).

Here, Thomas alleges that he was hired as an inmate employee, but on the day that he expected to start work, was informed that his "job offer had been rescinded by [Pheasantland Industries] Director Rene Stolsmark[,]" and that "the reason behind the recession was that Ms[.] Stolsmark learned that [Thomas] had filed this suit and named her as a defendant." Docket 11 at 14. "It is well established that the right to file a legal action is protected under the First Amendment." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (citing *Goff v. Burton*, 7 F.3d 734, 736 (8th Cir. 1993)). Thomas alleges that "Stolsmark stated something to the effect that 'if [Thomas] wants to sue [her] he can wait to get a job." *Id.* At this stage of the proceeding, this Court finds that Thomas has pled a plausible First Amendment retaliation claim. Therefore, Thomas's First Amendment retaliation claim against Stolsmark in her individual capacity for monetary damages survives § 1915A screening.

## II.   Motion for Reconsideration

Thomas also filed a motion for reconsideration of this Court's order denying his motion for a preliminary injunction. Docket 14. Thomas filed his motion pursuant to Federal Rule of Civil Procedure Rule 60(b), which states in relevant part that a "court may relieve a party . . . from a final judgment, order, or proceeding" due to "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Thomas states that Rule 60(b) is applicable because, in its order denying Thomas's motion for a preliminary injunction, the Court

27

noted that "Thomas has filed no affidavit or verified complaint matter[.]" Docket 14 at 1; *see also* Docket 13 at 3. Thomas "concedes that his original complaint . . . was not verified[,]" but states that he has subsequently filed an amended complaint and second amended complaint, "both of which were verified." Docket 14 at 1 (emphasis in original omitted). "Thomas asks that based on the fact that . . . the Court was mistaken about Mr. Thomas filing a verified complaint that it reconsider plaintiff's motion for preliminary injunction (Docket 12) [as] well as its own order denying plaintiff's motion for preliminary iInjunction [sic] (Docket 13)." Docket 14 at 2.

But Thomas misinterprets the Court's statement. In its order denying Thomas's motion for a preliminary injunction, the Court noted that

> Thomas has failed to satisfy the requirements of Rule 65(b) for issuing a temporary restraining order by failing to file an affidavit or verified complaint clearly demonstrating likelihood of immediate and irreparable harm, certify what efforts were made to give defendants notice of the request, or explain why relief should enter before they receive notice.

Docket 13 at 3. While Thomas filed an amended complaint that was verified, *see* Docket 8 at 14, neither his amended complaint nor supplemental complaint demonstrates a likelihood of immediate and irreparable harm, certifies what efforts were made to give defendants notice of the request, or explains why relief should enter before they receive notice. *See generally* Dockets 8, 11.

Although Thomas is proceeding pro se, he is not exempt from complying with the Federal Rules of Civil Procedure, local rules, and court orders. *Bennett*

*v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (citing *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993)); *see also Matthews v. Iowa State Penitentiary*, No. 4:17-cv-00190-RGE-HCA, 2017 WL 11511637, at *2–3 (S.D. Iowa June 28, 2017) (denying pro se prisoner's motion for temporary restraining order for failing to comply with Rule 65(b)); *Kirk of Family Engel v. Volker*, No. 8:25CV390, 2025 WL 1664311, at *2 (D. Neb. June 11, 2025) (noting that one reason for denying pro se plaintiff's motion for temporary restraining order was for not filing affidavit or certification about efforts to give notice and recognizing that "[h]is pro se status is no reason to disregard those requirements"). Accordingly, Thomas's motion for reconsideration, Docket 14, is denied.

## III.    Conclusion

Thus, it is ORDERED:

1.    That Thomas's motion to file an amended complaint, Docket 7, is granted.

2.    That Thomas's motion to file a second amended complaint, which this Court construes as a motion to file a supplemental complaint, Docket 10, is granted.

3.    That Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Wasko on the official capacity claims in accordance with Federal Rule of Civil Procedure 25(d).

4.    That Thomas's claims for injunctive and declaratory relief against defendants Roemmich and Stolsmark in their official capacities are

29

dismissed without prejudice as moot under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. That Thomas's Eighth Amendment deliberate indifference claim against Boyer and Brunz in their individual capacities for monetary damages survives § 1915A screening.

6. That Thomas's Eighth Amendment claim against Runge in his individual capacity for monetary damages is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That Thomas's Eighth Amendment deliberate indifference claim regarding his spinal stenosis against Kummer, Haynes, and Ramsdell in their individual capacities for monetary damages, and against Haynes in his official capacity for injunctive relief, survives § 1915A screening.

8. That Thomas's First Amendment right to send and receive mail claim against Biggins, Roemmich, and Wasko in their individual capacities for monetary damages, and against Lamb in his official capacity for injunctive relief, survives § 1915A screening.

9. That Thomas's First Amendment access to the courts claim against Biggins, Wasko, and Roemmich in their individual capacities for monetary damages, and against Lamb in his official capacity for injunctive relief, survives § 1915A screening.

30

10.    That Thomas's Fourteenth Amendment equal protection claim against Stolsmark in her individual capacity for monetary damages survives § 1915A screening.

11.    That Thomas's First Amendment retaliation claim against Stolsmark in her individual capacity for monetary damages survives § 1915A screening.

12.    That Thomas's motion for reconsideration, Docket 14, is denied.

13.    That the Clerk shall send ten blank summons forms and Marshal Service Forms (Form USM-285) to Thomas so that he may cause the complaint to be served upon the defendants, Boyer, Brunz, Kummer, Haynes, Ramsdell, Stolsmark, Biggins, Roemmich, Wasko, and Lamb.

14.    That Thomas shall complete and send the Clerk of Courts summonses and USM-285 forms for the defendants.  Upon receipt of the completed summons forms and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

15.    That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaints, Dockets 1, 8, 11, and this order, upon the defendants.

31

16. That the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

17. That Thomas will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

Dated May 27, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE